## IN RE STAHL'S ESTATE

### FIRST NATIONAL BANK & TRUST COMPANY OF LA PORTE ET AL. *v.* SMITH ET AL.

[No. 17,060. Filed November 13, 1942. Rehearing denied December 22, 1942. Transfer denied February 15, 1943.]

*Ben C. Rees,* of LaPorte, for appellants.

*John B. Dilworth,* of LaPorte, for appellees.

BLESSING, J.—This is a consolidation of two appeals, one being an appeal from a judgment denying an application for letters testamentary to appellant as a successor executor, and the other being an appeal from a judgment appointing an administrator with will annexed *de bonis non* of the estate of Albert J. Stahl, deceased.

Albert J. Stahl, the testator, died on the 13th day of November, 1941, at the age of 88 years, and his last will and testament and three codicils thereto were thereafter admitted to probate in the LaPorte Circuit Court.

The item in said last will and testament which pertains to the appointment of executors reads as follows:

"ITEM 2. I hereby nominate and appoint The State Bank of A. P. Andrew, Jr. & Son, of LaPorte, Indiana, as Executor of this my last Will and Testament.

"In case of the failure of my said Executor to qualify, or in case of its refusal to act, resignation, removal or dissolution, I hereby nominate and appoint the First National Bank and Trust Company of LaPorte, Indiana, as Executor of this Will.

"It is my wish that said Executor shall seek the counsel and advice of my trusted and devoted friends, Emma Zieke and Alfred J. Link, in all matter pertaining to the administration of my estate."

Item II of the third codicil to said will was executed August 15, 1941, and contained the following language:

"ITEM II: Wherein the mention is made of the name of Alfred J. Link in my last Will and Testament dated May 8th, 1936, I hereby request that the name of Alfred J. Link shall be extirpated in each and every instance and the name of ALBAN M. SMITH be inserted in his place and that the said Alban M. Smith shall seek counsel and advice of Emma Zieke, as per Item 2 of my said Will."

The State Bank of A. P. Andrew, Jr. & Son qualified as the executor of said will on November 21, 1941, and employed appellee Alban M. Smith as its attorney. On April 2, 1942, the stockholders of the State Bank of A. P. Andrew, Jr. & Son adopted a resolution for the voluntary dissolution of the bank, and on the 18th day of April, 1942, the liquidating agents of the said bank filed in the office of the clerk of the LaPorte Circuit Court, its written resignation as executor of the estate herein involved, and asked that it be discharged from the further exercise of its office.

On the same day that the resignation was filed, the appellant filed in the said clerk's office its acceptance of its appointment as successor executor of the estate of Albert J. Stahl, deceased, its executor's oath, and its application for letters testamentary in said estate.

When the above mentioned documents were offered for filing in open court, the resignation of the State Bank of A. P. Andrew, Jr. & Son as executor, and the application of the appellant for letters testamentary were filed, but the court refused to file the written acceptance of trust and oath of the appellant. On April 27, 1942, the appellant again tendered to the court and offered to file its written acceptance of its trust as successor executor and its oath, but the court refused this offer.

On April 24, 1942, the appellees Alban Smith and Emma Zieke filed a petition for the construction of the

will and determination of rights in respect: First, to the duty of the court to qualify the appellant as a successor executor; second, in respect to qualifying Hupp as administrator with the will annexed *de bonis non,* and; third, in respect to the continuance of appellee Smith as attorney for the successor executor or administrator with the will annexed. Appellant moved to strike out this petition, and, when overruled, filed answer, to which appellees Smith and Zieke filed a reply.

The matter was submitted to the court for trial on May 12, 1942, upon the application of the appellant for letters testamentary, and upon the petition of the appellees Smith and Zieke. Upon appellees' request, the court rendered special findings of fact and conclusions of law. On May 26, 1942, after the court had stated its conclusions of law, the resignation of the State Bank of A. P. Andrew, Jr. & Son was accepted by the court. Thereafter, on May 29, 1942, the appellant again filed in the office of the clerk of the LaPorte Circuit Court its acceptance of appointment as successor executor of the estate of Albert J. Stahl, deceased, its oath as such executor, and its application for letters testamentary. The court, on June 1, 1942, refused to file the acceptance and oath, but permitted the application for letters testamentary to be filed.

Also, on June 1, 1942, the appellees Smith and Zieke filed a petition, together with a bond and an oath, for the appointment of J. Earl Hupp, president of the State Bank of A. P. Andrew, Jr. & Son, as administrator with will annexed *de bonis non* of the estate of Albert J. Stahl, deceased. Appellant filed its written objections to said petition. These objections were overruled and exception taken.

The court thereafter entered a judgment denying appellant's application for letters testamentary and

appointment as successor executor; granting the petition of Smith and Zieke to issue letters of administration with the will annexed *de bonis non* to said Hupp as administrator, and directed the resigning executor, the State Bank of A. P. Andrew, Jr. & Son, to file a final report and accounting.

Appellant then filed a motion to set aside the appointment of Hupp as administrator and to revoke the letters of administration issued to him, which motion was overruled, and to which ruling exception was reserved.

Appellant has assigned as error the overruling of its motion to dismiss the petition for the construction of the will and determination of rights filed by Alban Smith and Emma Zieke; the refusal to permit appellant to file its acceptance of trust and executor's oath which was tendered on June 1, 1942; the denial of appellant's application for appointment as executor of the estate of Albert J. Stahl, deceased, filed on June 1, 1942; the overruling of appellant's motion to set aside the appointment of J. Earl Hupp as administrator; the overruling of appellant's motion for new trial, and error in each conclusion of law.

While the pleadings and proceedings in this matter before the lower court are confusing, the appellees, after the amendments to appellant's brief, concede that there is squarely before this court upon proper assignment of errors, the question as to the correctness of the two judgments of the LaPorte Circuit Court acting within its probate jurisdiction. The records in both cases present substantially the same questions.

The first question requiring our consideration is whether a testator may appoint a successor executor who is entitled to succeed to the administration of the testator's estate following the resignation of the first

executor who has partially administered upon such estate.

The question of successive executors has never been adjudicated in this State, but it has been held in other states that a testator may name two or more persons as his executors, not to serve as coexecutors, but by way of providing for succession or substitution in case the person or persons primarily designated, die, resign, or are unable to serve, and a successor thus appointed to complete the administration is an executor by substitution and not a mere administrator with the will annexed *de bonis non.*

In the case of *Kinney* v. *Keplinger* (1898), 172 Ill. 449, 457, 50 N. E. 131, the will in question contained the following provision: " 'I hereby appoint my wife, Sarah Clark, executrix of my last will and testament, and that she shall not be required to give bond, and in case of her death or inability to act I hereby appoint Michael Kinney executrix' " (executor) " 'of my last will and testament . . .' " The wife, Sarah Clark, served as executrix for four years before her death, and upon her death, the court appointed the said Kinney as executor. The court in said case held that Kinney was an executor and not an administrator. In the opinion, the court quoted the following passage from 1 Lomax, Ex'rs, p. 172:

" 'Where a testator appoints an executor, and provides that in case of his death another should be substituted, then on the death of the original executor, although he has proved the will, the executor so substituted may be admitted to the office, if it appear to have been the testator's intention that the substitution should take place on the death of the original executor, whether happening in the testator's lifetime or afterwards.' "

The court also said:

"In *Hartnett* v. *Wandell,* 60 N. Y. 346, the court had occasion to consider this question and expressed its conclusions in the following language: 'Executors may be appointed with separate functions, or to succeed each other in the event that those first named shall die, become incapacitated or unwilling longer to serve, or two persons may be appointed to act for a definite period or during the minority, or during the absence from the country of one appointed executor.' "

From an examination of our statutes we are unable to find any provision that prevents a testator or in any wise denies him the right to name and appoint a successor executor, and the appellees concede that the weight of authority, if followed, requires an affirmative answer to the above question. We so answer.

The right of a testator to appoint a successor executor being established, the appellant's right, following the resignation of the State Bank as the executor of the last will of Albert J. Stahl, deceased, to qualify as a successor executor is governed by the same rules and provisions that applied to qualifying the primary appointee of the testator.

This brings us to the second question for our consideration, viz: Are the facts here involved such as to call for or permit the exercise of judicial discretion, in passing on appellant's application for letters testamentary, and if so, was there an abuse of such discretion in refusing to permit appellant to so qualify?

It is the contention of the appellees that the facts before the court with respect to the appointment of a successor to administer the estate of said Stahl were such as to warrant the exercise of sound judicial discretion by the lower court, while the appellant insists

that under the facts it was mandatory upon the court to appoint the appellant as successor executor of the last will of said Stahl.

Stahl's will is long and complicated. Among other provisions is one directing the organization of a corporation of which Alfred J. Link was to be one of the directors. And by item two of said will, hereinbefore set out, Link was one of the devoted friends from whom the testator requested that his executor seek counsel and advice in all matters pertaining to the administration of his estate. By the terms of the last codicil, executed on August 15, 1941, a portion of which is hereinbefore set out, the name of Alfred J. Link was extirpated and the name of Alban M. Smith substituted. It is these provisions in the will and codicil that gave rise to the real controversy between the appellant, the First National Bank and Trust Company, and the appellees, other than the State Bank, and that furnish the basis for the respective contentions hereinbefore set out.

The undisputed facts disclose that the appellant bank is authorized by law to serve in the capacity of executor, when so named in a will and that it has in its employ an efficient staff in trust matters; that the appellant has never renounced its trust, but repeatedly tendered its application for letters testamentary together with its acceptance and oath of office; that Alban M. Smith had been employed by the State Bank of A. P. Andrew, Jr. & Son as its attorney in the partial administration of Stahl's estate, and upon information that said Smith, Miss Zieke, one of the legatees in said will, and Mr. Hupp, who had been the trust officer for the first executor, were seeking to have said Hupp appointed as administrator with the will annexed to succeed the resigning executor, the board of directors of appellant bank authorized the employment of Ben Rees, of the

firm of Rees and Link to procure its appointment as successor executor of the Stahl will and to appeal the case if the decision of the court should be adverse to appellant; that Mr. Link of the firm of Rees & Link is the same person whose name appears in the original will and whose name was extirpated by the last codicil to said will; that the firm of Rees and Link had represented the decedent in his most important matters over a number of years and their employment continued in certain matters into the year of 1940; that the said Alban M. Smith had also represented the decedent over a number of years; that his relation to the decedent remained friendly at all times, while it appears that a misunderstanding of some sort had existed between said decedent and said firm of Rees & Link for an undertermined period before testator's death. We think upon the record that the competency of each of the attorneys above referred to cannot be questioned. There is no evidence to the contrary with respect to Rees and Link, and while there is no testimony on the subject, the court found that said firm is well qualified to act as legal representatives of any executor or administrator in the handling of estates in this State.

This finding of the court is noted because it discloses along with certain evidence the basis for the decision of the lower court.

On the trial of this cause the appellant produced as a witness the vice president and trust officer of the appellant bank. The court for a period took charge of this witness, and we set out the testimony elicited from him upon questions propounded by the court as follows:

"The Court: Are you familiar with the provisions of the will of Albert J. Stahl, and also the codicils thereto?

"A. Yes.

"Q. Are you familiar with the last codicil?

"A. Yes.

"Q. You know that that provides that the name of Alfred J. Link shall be extirpated, and the name of Alban M. Smith placed therein in the place and stead of Alfred J. Link? You know that to be true?

"A. Yes.

"Q. Is it your intention, if the bank is appointed executor of this will to employ either Alfred J. Link or any member of his firm to act as attorney for the bank in the administration of the estate?

"A. I can answer that this way: Our board has decided that we want to carry this through and get our appointment. That matter has not been settled.

"Q. Do I understand that the bank does not know whether either member of the law firm of Rees & Link will be selected by the bank?

"A. Whether any one knows? I don't know. It is something in the future.

"Q. What do you mean by that?

"A. We want to get this appointment first, then decide on our attorney. That can be decided later.

"Q. You haven't decided on it yet?

"A. No.

"Q. You have no idea whom the bank would appoint?

"A. You mean to handle the estate?

"Q. You have the right to employ any one you want to, after you get the appointment. There isn't any question about that. I am asking what you are going to do after you get the appointment—if you do get the appointment—would you disregard the provisions of the will, the codicil of the will wherein Alfred J.

Link is extirpated and Alban M. Smith substituted therefor?

"A. No, it's not our intention to. We have a carbon copy of it here for the court. It says, that the name of Alfred J. Link shall be extirpated in each and every instance and the name of Alban M. Smith to be inserted in his place—whatever that means we of course want to carry out.

"Q. Have you any idea what it means now?

"A. Frankly, I have not. No, I don't know what it means.

"Q. Do you know what 'extirpate' means?

"A. To strike out.

"Q. It means to pull out by the roots, doesn't it?

"A. That's a strong way of using it.

"Q. If your bank employed Ben C. Rees as attorney in this matter, and he is a partner of Alfred J. Link, would you say that would be pulling out by the roots the name of Alfred J. Link out of any interest in the matter?

"A. I can say this to you, that nothing official has as yet been done concerning the matter. My own, personal idea in the matter and my recommendation would be that the bank as executor employ the firm of Rees & Link.

"Q. What reason, if any, would you have as trust officer of the bank for not recommending the employment of Mr. Smith as attorney for the executor?

"A. Because Mr. Smith—because it is evident from the records that Mr. Smith has no intention of having the bank as executor. It is clear from his petition that he is attempting to have Mr. Hupp appointed as administrator; and no man can serve two masters." (The last

sentence of this answer went out on a motion to strike by the attorney for some of the appellees.)

It was shown, however, that the witness had knowledge that appellee Smith had prepared for the liquidating agents of the State Bank, a deed conveying the real estate of Albert J. Stahl (all of which had been devised to the executor), to appellee Hupp as administrator with the will annexed and that said Smith had prepared a final report for the resigning executor requesting that the real estate be transferred to the administrator with the will annexed.

Section 6-201 Burns' 1933 provides:

> "Whenever any will shall have been duly admitted to probate, the clerk of the circuit court in which the same shall have been probated shall issue letters testamentary thereon to the person or persons therein named as executors who are competent by law to serve as such, and who shall appear and qualify.
>
> "No person shall be deemed competent to serve as an executor who, at the time of application for letters, shall, upon proof made before such court or clerk, be shown to be:
>
> "First. Under the age of twenty-one [21] years.
>
> "Second. To have been convicted of a felony.
>
> "Third. Who shall be adjudged by said court or clerk incompetent to discharge the duties of an executor by reason of improvidence, habitual drunkenness, or other incapacity."

Unless the appellant was shown to have been disqualified under at least one of the provisions of this statute it was mandatory upon the LaPorte Circuit Court acting within its probate jurisdiction to approve appellant's application for letters testamentary of the last will of Albert J. Stahl, deceased. *Farmers', etc. Trust Co.* v. *Security Trust Co.* (1923),

79 Ind. App. 537, 138 N. E. 97. In that case the testatrix in her will had appointed the Farmers etc. Trust Company as her executor, and designated the president of said company as the attorney to settle her estate. At the time of the death of the testatrix ill feeling existed between the widower of the testatrix and the president of said trust company, and the widower filed a petition for the appointment of the Security Trust Company as administrator with the will annexed, and the appointment was made. The trust company, designated by the testatrix to be the executor of her will had no notice of the application for the appointment of an administrator with the will annexed, but upon learning of the appointment, and within the statutory period, sought to have the letters of administration revoked, and filed its application for letters testamentary. Upon a hearing the court refused to revoke the letters of administration and there was an appeal which resulted in reversal of the trial court. This case so clearly sets forth the principles of law applicable to the facts in the instant case that further citation is unnecessary and a repetition of the principles therein announced need not be here repeated. This case, in our opinion, fully supports the contention of appellant in the instant case and is decisive on the question last propounded.

The appellees, who are undertaking to uphold the decision of the lower court, rely upon the case of *Studabaker* v. *Faylor* (1917), 66 Ind. App. 175, 114 N. E. 772, and kindred cases of foreign jurisdictions. In the Studabaker case the executor named in the will practiced a fraud on the testator subsequent to the execution of the testator's will, secured title to certain real estate by said fraud, and after the death of the testator took possession of the real estate under a title so secured. Suit was required to set aside this conveyance and the

court on application by the named executor for letters testamentary refused the issuance thereof. We are of the opinion that the decision in this case based on the foregoing facts falls far wide of the mark as an authority to support the contention of said appellees in the case at bar.

In the instant case we have no suggestion of fraud nor any facts from which an inference might be drawn that the interest of the appellant is in any wise adverse to those of the estate which it seeks to administer.

It is apparent from the evidence that we have set out that the court refused letters testamentary to appellant because of the probable employment of the firm of Rees & Link as its legal representative and that such employment would result in a violation of the terms of the last codicil by which the name of Link was extirpated.

It should first be noted that the testator, either in his will or codicils thereto, did not direct the employment of any person as legal adviser of the executor or successor executor named in his will. The request of the testator that his executor seek counsel and advice of certain devoted friends is merely precatory and of no binding force. Neither could the court use such request as a justification for the exercise of sound judicial discretion in passing on the competency of appellant to serve in the capacity of executor of said will. Especially is this true here because there is no evidence disclosing a purpose on the part of the appellant if appointed executor to violate such request.

The court in his examination of the witness for appellant recognized the right of the appellant, if once appointed, to employ any attorney it might select and we are of the opinion that a court cannot refuse to appoint an executor nominated by a testator, if competent under the statute, because the

person so nominated in the will has chosen a legal adviser other than the one the court would have him select.

The responsibility for the proper administration of an estate where there is a will rests upon the executor if one be named in the will, and not upon his █ attorney. If the executor incurs a liability to his trust through the neglect or bad advice of his counsel, he cannot escape such liability by taking refuge behind such neglect or bad advice of his attorney.

If the request of Stahl that his executor seek counsel and advice of certain devoted friends, one of whom is an attorney, could be construed as a direction to █ his executor to employ such attorney as its legal adviser, then we would be inclined to follow the authorities below noted which hold that an executor need not necessarily accept the services of an attorney selected by the testator, but may make his own selection of a legal adviser. *In re Ogier* (1894), 101 Cal. 381, 35 P. 900; *Matter of Caldwell* (1907), 188 N. Y. 115, 80 N. E. 663; *Conlan* v. *Sullivan* (1935), 280 Ill. App. 332.

But as we have heretofore stated, the request of the testator is merely precatory and does not impose a mandate upon his executors named in the will to employ any person named in the will as a legal adviser.

We note the following language from Ruling █ Case Law which we deem appropriate on the question now under consideration:

"Letters testamentary must ordinarily be issued in accordance with the will of the testator, unless the person named as executor is ineligible. When asked to appoint the person whom a testator has nominated as executor, the court cannot refuse to make the appointment on the ground that reasons are alleged which warrant the belief that the ex-

ecutor will subsequently incur disabilities speci-
fied, or will so conduct himself that grounds for
revocation of the letters will arise in the future.".
11 R. C. L. p. 31.

Under the law, a testator is given the privilege of
appointing a competent executor of his will, and
this privilege cannot be taken away by the
devisees, legatees, or by the court.

For the reasons herein set forth, the facts in the
instant case did not warrant the exercise of discretion
on the part of the judge of the LaPorte Circuit Court,
and we are of the opinion that error was committed .
in the refusal of the court to revoke the letters of
administration with the will annexed, issued to J. Earl
Hupp, and in refusing to appoint the appellant as
executor of the last will of Albert J. Stahl, deceased.

It is quite probable that said Hupp, due to the fact
that he was the trust officer of the executor first named,
and partially administered this trust, is more
familiar with the affairs of said estate at the
present time, and there is nothing to indicate a
lack of his ability to properly discharge his duties as
such administrator. This same situation arose in the
case of *State ex rel. Lauridsen* v. *Superior Ct.* (1934),
179 Wash. 198, 210, 37 P. (2d) 209, and the court in a
majority opinion says:

"We are called upon, however, to adjudicate the
rights of the individuals, and since we cannot say
that they are in any way disqualified, we are not
permitted to deprive them, or the testatrix naming
them, of the rights which the law secures to them."

In view of our conclusion it is not necessary to pass
upon other assigned errors, nor is there any necessity
for a new trial. The judgments involved in these
appeals are reversed with instructions to the court to

revoke the letters of administration with the will annexed in the estate of Albert J. Stahl, deceased, issued to J. Earl Hupp, and to sustain the application for letters testamentary to the appellant as executor of the last will of the said Stahl.

Flanagan, C. J., and Curtis, J., dissent but concur in that part of the majority opinion which holds that the testator, under proper circumstances, may name in his will a successor executor.

NOTE.—Reported in 44 N. E. (2d) 529.